## MARY E. DYER v. JOHN FISHER.

FINDING, *Not Sustained.* In an action by a wife to enjoin the proposed sale of her land to satisfy a judgment against her husband, it was found by the court that he had an equitable interest in the land to the extent of $200. *Held*, Upon a review of the testimony, that the finding is without support.

*Error from Sedgwick Common Pleas Court.*

Action by *Mary E. Dyer* against *John Fisher*, as sheriff, to enjoin the sale of certain land to satisfy a judgment against her husband.   The trial court found that the husband had an equitable interest in the land, to the extent of $200, and plain-tiff brings error.

*Campbell & Dyer*, for plaintiff in error, after summarizing the facts, contended that it is very plain from the whole transaction that W. H. Dyer acted as the agent of his wife, and while he might have had an equitable interest in the land at one time to secure him for any money he might have been compelled to pay on the Skinner note, and afterwards on the Little note for the $300 borrowed, he certainly had no equitable lien or interest after these notes had been taken up and canceled, and the amount secured by Mrs. Dyer by a mortgage upon her land.   There is no evidence whatever of any fraudulent intent, unless the bare fact of the relationship of husband and wife makes a case of fraud.   This cannot be, for certainly a wife may employ her husband to transact business of this kind for her.   There is not a particle of evidence that it was the intention that W. H. Dyer should have any interest in the land purchased from Shay.   What he did in the way of getting the money was voluntary on his part, and no doubt in good faith as the agent of his wife, who was sick and unable to transact the business.   There was an urgent necessity that the money should be obtained immediately; otherwise there was danger that somebody else would purchase the land.

The court erred in the second and third findings of fact and of each of its conclusions of law, so far as it related to the 100 acres of land above-mentioned.

*Bentley & Ferguson*, for defendant in error:

No question arises in this court except whether there was any evidence introduced at the trial below tending to show

that the judgment debtor, William H. Dyer, had any interest in the land in question. The record will not sustain the facts claimed by plaintiff in error in this respect. The court below did not find the fact with reference to the transfer of the 380 acres of land owned by Dyer and occupied by him and his wife as a farm, to Dyer's brother, and from Dyer's brother back to Mrs. Dyer, in favor of the plaintiff. The court did find that Dyer had an interest in the 100 acres of land in question, and this finding is supported by the fact that Dyer paid the $300 purchase-money individually, with money borrowed from the bank by him individually, upon his own credit and upon collateral security consisting of his stock and a growing crop of grain upon land the legal title of which was in Caleb Dyer, the judgment debtor's brother, at that time, with the judgment debtor in possession of and cultivating the land, under an arrangement with his brother that as soon as a loan of $300 or $400 loaned by Caleb Dyer to him was paid off the 380 acres of bottom should be transferred back to W. H. Dyer. It was afterward thought wise, when the transfer from Caleb Dyer was made, to take the title in Mrs. Dyer's name; so that now she is the owner, if plaintiff's views are correct, of 460 acres of fine bottom land, which Dyer formerly owned, but now manages for his board and clothes as his wife's agent, while his creditors whistle for their money.

The record clearly shows that William H. Dyer individually furnished the purchase-money for the land in question, and took the title in his wife's name, and mortgaged crops subject to execution under plaintiff's judgment in the justice court to get title to said land, March 20, 1883, and took the title in his wife's name for the purpose of defrauding his creditors. Hayner & Co., the judgment creditors, were prevented from satisfying their judgment by levy and sale of Dyer's growing crops and stock on the home place by reason of his chattel mortgage of the same to Skinner, and afterward to Little to raise money to put into the land in question. Hayner & Co. therefore had a right to follow the money into

the land. All of the crops and stock described in the chattel mortgage (referred to in Little's and in Skinner's testimony) were raised on the land conveyed by Caleb to Mary E. Dyer, prior to the conveyance to her, in October, 1883.

The opinion of the court was delivered by

JOHNSTON, J.: Mary E. Dyer brought this action to prevent the sale of a quarter-section of land which had been levied on by John Fisher, as sheriff, to satisfy a judgment in favor of J. E. Hayner & Co., which had been obtained against W. H. Dyer, her husband, for the sum of $286. The judgment creditor appears to have claimed that, although the legal title to the land was in Mary E. Dyer, her husband was the real owner, or at least had an equitable interest in the land, which could be properly subjected to the payment of his debts. At the trial there was considerable testimony offered in regard to the transactions between the husband and wife since their marriage, and also as to the property held, acquired and sold by each, in an effort to show that the legal title to the land had been placed in the wife for the purpose of defeating the creditors of the husband. It does not appear, however, that there was any debt of the husband not provided for other than the one in question of $286. It was shown that, at the time of their marriage, in 1876, each owned real estate, and that that belonging to the wife was subsequently sold and converted into money. The husband owned the larger body of land, but it appears to have been heavily incumbered, and he claims that he was owing a large sum of money to his brother, Caleb W. Dyer, and, being unable to pay this debt, he conveyed his real estate to his brother, on December 1, 1880. He retained possession of the land, however, claiming to have rented it from his brother, and on September 25, 1883, the same land was reconveyed to his wife. There was included in these transfers 60 acres of the quarter-section upon which the execution was levied, and the sale of which is sought to be enjoined by this action. The remaining 100 acres of the quarter-section levied upon were

purchased by Mary E. Dyer from George M. Shay on March 20, 1883. The 100-acre tract was never owned by the husband, and was not included in the transfer about which so much testimony has been given.

The court found that the 60-acre tract which was included in the transfer, the good faith of which was questioned, was owned by Mary E. Dyer, and was not subject to the payment of her husband's debts. This finding practically holds that the transfers were not fraudulent, nor made with the intention of cheating and defrauding the creditors of the husband. Mary E. Dyer is found to be the legal and equitable owner of the only land involved in these transfers, and the injunction against the sale of the same to satisfy the husband's debts was made perpetual.

As to the 100-acre tract which was levied upon, the court found that at the commencement of the action William H. Dyer had an equitable interest in the same to the extent of $200; and further, that when William H. Dyer contracted the indebtedness upon which the judgment was founded, he was the legal owner of the 100-acre tract, and that it was conveyed to Mary E. Dyer, with her knowledge and consent, for the purpose of cheating the creditors of William H. Dyer. This finding is not sustained by the evidence. In the first place, the testimony does not show that the legal title to the 100-acre tract was ever in W. H. Dyer; and, in the second place, it fails to show that he holds an equitable interest therein to the extent of $200, or any other amount. It is true that after Mary E. Dyer determined to purchase the land he negotiated the purchase, and, as a cash payment of $300 was required at once, he borrowed that sum for a short time upon his own note, which was secured by a chattel mortgage. Afterward, Mary E. Dyer made a loan upon her real estate and raised a fund, a part of which was used to pay off this $300 debt. The note given by W. H. Dyer was paid and discharged in October, 1883; and whatever may have been his claim upon the land prior to that time, there is nothing in the evidence showing an interest or trust estate in him after

full payment had been made of the note which he had given. It appears that he has no money invested in the land; and further, it does not appear that there was any agreement or understanding that she should hold the legal title in trust for him on any account.

The claim that there was an attempt to defraud his creditors is without support so far as the Shay land is concerned, and is negatived by the first finding of the court so far as the 60-acre tract is concerned. There is some testimony tending to show that the 60-acre tract may have been transferred to defeat creditors; and if the court had decided that it was subject to levy and sale under the execution, its finding could not have been disturbed in this court. The trial court, however, by its decision has declared in favor of the honesty of that transaction, and adjudged that Mary E. Dyer holds both the legal and equitable title to that land. As the record does not show that W. H. Dyer has any equitable interest in the remaining portion of the tract levied upon, the finding of the court is without support, and its judgment must therefore be reversed.

All the Justices concurring.